# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Criminal No. 11-42 |
| v. | ) | |
| | ) | **ELECTRONICALLY FILED** |
| GREGORY WASHINGTON, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**I. INTRODUCTION**

Before the Court is Petitioner Gregory Washington's *pro se* Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1416). This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331. After careful consideration of Petitioner's Motion, the Government's Response thereto (ECF No. 1418), and the entire record in the case, including the trial transcript of this matter and the sentencing hearing, the Court will deny Petitioner's Motion under 28 U.S.C. § 2255.

**II. PROCEDURAL BACKGROUND**

On November 28, 2012, Petitioner was convicted by a jury of conspiracy to distribute and to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. Petitioner had been represented by court-appointed attorney Stephen Begler. On December 4, 2012, Petitioner engaged the services of attorney Sally A. Frick to continue his case. This Court subsequently determined that Petitioner's offense warranted a sentencing guideline range

of 262 to 326 months' imprisonment. The Court ultimately imposed a sentence of 262 months' imprisonment, followed by a five-year term of supervised released, on March 13, 2013.

On March 26, 2013, Petitioner filed an appeal with the United States Court of Appeals for the Third Circuit. On March 27, 2015, the Court of Appeals affirmed this Court's judgment of conviction. Pursuant to 28 U.S.C. § 2255, Petitioner filed the present Motion to Vacate, Set Aside, or Correct Sentence on May 4, 2016. The Government filed its Response on May 13, 2016. Petitioner asserts seven (7) grounds in support of his Motion.

### III. STANDARD OF REVIEW

Section 2255 of Title 28 United States Code provides, in relevant part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Whether to conduct a hearing is within the sound discretion of the District Court. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir.2008); *United States v. Day*, 969 F.2d 39, 41 (3d Cir.1992) (quoting *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989), *cert. denied* 500 U.S. 954, 111 S.Ct. 2262, 114 L.Ed.2d 714 (1991)). In exercising that discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Day*, 969 F.2d at 41–42 (citation omitted).

See also Rules Governing Section 2255 Proceedings, Rules 4 and 8. The Court must view the factual allegations in the light most favorable to the Petitioner. *Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir.1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted). However, a Section 2255 Motion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle Petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir.2005) (citations omitted).

In order for Petitioner to establish counsel was ineffective, he has the burden to show counsel's performance (i) was in fact deficient and (ii) that the deficient performance so prejudiced the defense as to raise doubt to the accuracy of the outcome of the trial [or the sentence]; i.e., Petitioner must demonstrate a reasonable probability that, but for counsel's deficiency, the outcome of the trial [or sentence] would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's conduct presumptively "falls within the wide range of reasonable professional assistance," and the Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. at 689–90 (citation omitted). On the other hand, the mere fact that counsel's challenged performance or tactic can be called "strategic" in the sense it was deliberate, does not answer the dispositive question of whether that decision or tactic fell within the wide range of "reasonable professional assistance." *Davidson v. United States*, 951 F.Supp. 555, 558 (W.D.Pa.1996), quoting *Government of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 – 32 (3d Cir.), *cert. denied* 519 U.S. 1020, 117 S.Ct. 538, 136 L.Ed.2d 423

(1996). "Reasonable trial strategy must, by definition, be reasonable." *Davidson*, 951 F.Supp. at 558.

Counsel's strategy must be judged by a standard of reasonableness based on the prevailing norms of the legal profession. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir.1996) (*Strickland* standards for claims of ineffective assistance of counsel unchanged under Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214). Ineffective assistance of counsel will not be found simply because, with the assistance of hindsight, the reviewing court disagrees with counsel's strategy. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.1997).

In the context of a Section 2255 petition for collateral relief, the United States Court of Appeals for the Third Circuit has offered the following guidance:

> The ... test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the Strickland holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all of appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the Strickland test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under Strickland, then further factual development in the form of a hearing is required. That is, if a nonfrivolous claim does not conclusively fail either prong of the Strickland test, then a hearing must be held. Thus, the district court must employ the Strickland analysis at least once, and may have to employ it twice—first, as a threshold analysis of all claims on a limited record, and then again only on colorable claims after full factual development of those claims.

*United States v. Dawson*, 857 F.2d 923, 927–28 (3d Cir.1988).

Under the first prong of the *Strickland* test, "an attorney renders ineffective assistance when his performance 'f[alls] below an objection standard of reasonableness,' given the

particular circumstances of the case at hand." *Hodge v. U.S.*, 554 F.3d 372, 379 (3d Cir.2009) (quoting *Strickland*, 466 U.S. at 688). As in any other ineffective assistance of counsel context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Court must employ a highly deferential standard, which entails "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Hankerson*, 496 F.3d 303, 310 (3d Cir.2007) (quoting *Strickland*, 466 U.S. at 689). To rebut this presumption, a Petitioner "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel, or (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir.2005).

Under the second prong (i.e., the prejudice prong), Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.' " *Hankerson*, 496 F.3d at 310 (quoting *Strickland*, 466 U.S. at 694).

## IV. DISCUSSION

### A. Ground I – Court Erred in Admitting Evidence in Violation of 704(b)

Petitioner begins by attacking the trial testimony of Officer Michael C. Warfield. (ECF No. 1416 at 7 – 9). Specifically, Petitioner alleges that Officer Warfield went beyond the scope of permissible expert testimony by speaking directly to Petitioner's state of mind and intent. However, as noted by the Government, Petitioner failed to raise this claim on direct appeal. (ECF No. 1418 at 8 – 9).

The Court of Appeals for the Third Circuit has established that a petitioner "has procedurally defaulted all claims that he neglected to raise on direct appeal." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). A petitioner may escape a finding of procedural default only by demonstrating that (1) he was actually innocent of the crime for which he was convicted, or (2) there was a valid cause for the default, as well as prejudice arising from the default. *Id.*

In an attempt to demonstrate actual innocence, Petitioner could have pointed to a change in substantive law which removed his conduct from the reach of the criminal statute at issue in this case. *United States v. Davies*, 394 F.3d 182, 191 (3d Cir. 2005) (*Bousley*, 523 U.S. at 620). Alternatively, Petitioner could have adduced new, reliable evidence of innocence which was not previously discovered or presented to the jury. *Id.* (citing *Sweger v. Chesney*, 294 F.3d 506, 523 (3d Cir. 2002)). Plaintiff failed to make either showing.

Further, Petitioner has neither challenged the adequacy of his representation during the appeals process, nor presented evidence that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim" in earlier proceedings. *Parkin v. United States*, 565 F.App'x 149, 151 (3d Cir. 2014) (quoting *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005)). Petitioner's Motion seeks merely to re-litigate facts already presented to a jury. The Court finds this claim to be procedurally defaulted.

B. Ground II – Government's Use of False Testimony

Petitioner claims that the trial testimony of Gregory O'Neal was false and that the Government was aware – or should have been aware – of Mr. O'Neal's fabrications in return for leniency in an unrelated case. (ECF No. 1416 at 10 – 15). As with his previous claim, Petitioner

6

failed to raise this issue on direct appeal. (ECF No. 1418 at 12). The Court similarly finds this claim to be procedurally defaulted.

### C. Ground III – Government's Suppression of Exculpatory Evidence

Petitioner asserts that the Government failed to divulge all exculpatory evidence – i.e. pre-trial interviews with Mr. O'Neal – in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady*, the Government has a duty to disclose impeachment or exculpatory evidence. *Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013) (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). In order to demonstrate a *Brady* violation, Petitioner must establish that "(1) the evidence at issue is favorable to the accused; (2) the evidence was suppressed by the state; and (3) the evidence is material." *Id.*

As noted by the Government, Petitioner fails to specify any evidence which was actually suppressed in advance of trial. (ECF No. 1418 at 12 – 14). Petitioner admits that the Government provided a "plethora of recorded interview material from…Gregory O'Neal." (ECF No. 16). Petitioner's sole qualm seems to be that the pre-trial interviews with Mr. O'Neal were not as incriminating as Mr. O'Neal's trial testimony. This, however, is not a violation of *Brady*. Petitioner has presented no evidence that these pre-trial interviews were unavailable to him and his counsel prior to trial. As such, Petitioner is simply requesting this Court to re-weigh the credibility of Mr. O'Neal. The Court will not do so.

### D. Ground IV – Government Misled the Jury

Petitioner claims that the jury's conclusion that he distributed more than one (1) kilogram of heroin could not be supported by the facts of record – particularly the testimony of Mr. O'Neal. (ECF No. 1416 at 19 – 21). Once again, the Court finds this claim to be procedurally

defaulted, because it was not raised on direct appeal.[1] Petitioner's claim amounts to nothing more than an invitation to the Court to re-weigh evidence.

E. Ground V – Ineffectiveness of Counsel – Failure to Protect Sixth Amendment Rights

Petitioner argues that he received ineffective assistance from his counsel when his counsel failed to examine individual jurors following the Court's receipt of a note from the jury asking: "[D]oes the jury need to be concerned about our personal safety since we enter and leave the courthouse at the same time as the guests of the courtroom?" (ECF No. 1416 at 22). Petitioner claims that this note is an indication of the impartiality of at least one juror, and that Petitioner's counsel should have sought to discover who the juror was so that he or she could not continue to serve on the jury. (ECF No. 1416 at 20 – 24). The Government responds by noting that Petitioner explicitly consented to his counsel's course of action during trial after a significant discussion at sidebar, and that counsel's course of action was not unreasonable, regardless of Petitioner's consent. (ECF No. 1418 at 18 – 19).

The dialogue of record regarding this issue is as follows:

THE COURT: All right. We have received a question from the jury which we'll mark as Court Exhibit No. 1. We'll give counsel each a copy of it and show it to the Defendant, and we'll talk about what we should do. The question from at least one juror is, quote, does the jury need to be concerned about our personal safety since we enter and leave the courthouse at the same time as the guests of the courtroom, question mark, closed quote?
...
So I want to talk about this matter. It's very easy for me to have the jurors come in and out of a separate door, which we obviously have done in the past. So do you want some time on behalf of the Defendant to talk to the Defendant about this matter?
...

---

[1] Petitioner did make a related claim before the Court of Appeals "that the district court erred by finding by a preponderance of the evidence that Washington had distributed more than one kilogram of heroin." *United States v. Washington*, 602 F.App'x 858, 861 n. 2 (3d Cir. 2015). However, the Court of Appeals held that "Washington was unable to demonstrate reversible error with respect to any of these issues, and we therefore will decline to grant relief on those claims." *Id.*

So I'd like you to go talk -- take a few minutes, go back to your table, talk to the Defendant and work out what you think is a solution, and Government counsel can also talk to you.

...

THE COURT: Yes? And the record is clear the Defendant has been standing here through all of this entire sidebar.

MR. BEGLER: I think we can agree, the defense, that if the Court would see fit to let the jury leave through an alternative exit, that would be fine with us, number one. And number two, the Court could also tell the jury that if they feel they are being contacted improperly, to notify the Court immediately.

THE COURT: Fine. I think I did that before the break, but I'll do that again. Yes?

MR. HALLER: I have no problem with that at all as a remedy. The one concern I have is what prompted the note, if it was a general concern for some reason or if something happened that prompted the note that isn't listed in there. My worry is that, you know, why would a juror ask this? It rarely is asked, and I'm wondering if as a prophylactic measure, the Court may want to inquire what prompted this note? Because if there's something more to it beyond -- there almost has to be something more to it, something specific.

THE COURT: Well, we just recently -- our next to the last case, we had a juror bring this up on her own. We had to replace her. So I don't know that anything specific caused it. How would you like to make that inquiry? Do you want the Deputy Clerk to go back and ask whether there was something that caused this, or was it a general concern? If you start bringing them out one by one, you know, that can create its own issues, too, but I'll do whatever you collectively want. Primarily we're interested in whatever the Defendant wants.

MR. HALLER: Exactly.

MR. BEGLER: I'm fine as it stands, but I don't think anything happened, quite frankly.

MR. HALLER: If the Defendant is fine with that, then I'm not going to push the subject any farther.

THE COURT: Would you like the Deputy Clerk to go back and just ask whether this is a general concern or whether there was something specific? Would you want her to do that?

MR. HALLER: Only if the Defendant wants to proceed in that manner. I don't have a reason to do so other than I don't want it to come back later on that they observed something specific that would be argued as having been detrimental or

9

prejudicial to the Defendant and a claim be made that some sort of individual voir dire of this particular juror should have occurred.

THE COURT: The Defendant has experienced counsel. The Defendant's obviously sophisticated, and they've had an opportunity to chat. Is that correct, sir?

THE DEFENDANT: Yes.

THE COURT: Okay. Are you satisfied with the solution being just telling the jurors that we'll take them in and out of a separate entrance? Is that acceptable to you?

THE DEFENDANT: Yes.

THE COURT: And you've had adequate time to talk to your attorney about this matter?

THE DEFENDANT: Yes.

THE COURT: Do you want more time to talk to your attorney?

THE DEFENDANT: No. We'll be all right.
...
THE COURT: Why don't we just say in light of Court Exhibit 1, we're just going to let the jury exit and enter through a separate door. Is that acceptable to the Government?

MR. HALLER: Yes, Your Honor.

THE COURT: Defendant?

MR. BEGLER: Yes, sir.

THE DEFENDANT: Yes, sir.

(ECF No. 1233 at 90 – 95).

This dialogue demonstrates that Petitioner was apprised of his rights, and that he was given ample opportunity to discuss the issue of impartiality and voir dire with his counsel. He also ultimately agreed with his counsel's course of action. Petitioner nonetheless disagrees with this course of action in his present Motion.

However, to challenge the effectiveness of his counsel, Petitioner must demonstrate that counsel's performance was deficient, and that the deficiency so prejudiced the defense that the accuracy of the trial's outcome is called into doubt. *Strickland*, 466 U.S. at 687. The Court must employ a highly deferential standard, here – the conduct of Petitioner's counsel presumptively "falls within the wide range of reasonable professional assistance." *Id.* at 689 – 90. The Court notes that Petitioner has failed to advance evidence that his counsel's suggested strategy was not, in fact, motivating his counsel's actions, or that his counsel's course of conduct could never be considered a sound strategy. *Thomas*, 428 F.3d at 499. Without one of these two showings, the presumed reasonableness of his counsel's actions cannot be rebutted. Ineffectiveness has not been demonstrated.

F.  Ground VI – Court Permitted Use of Inadmissible Evidence

Petitioner returns to his attack of Mr. O'Neal's testimony at trial – this time with respect to the accuracy of the quantity of drugs distributed by Petitioner. For the same reasons discussed with respect to Petitioner's Ground IV, this claim is procedurally defaulted.[2]

G.  Ground VII – Ineffectiveness of Counsel – Failure to Draft Curative Jury Instructions

Lastly, Petitioner claims that his counsel provided ineffective assistance when he failed to request a curative instruction in response to trial testimony by Officer Warfield to the effect that a brick of heroin typically contains two (2) grams of the substance, and approximately 500 bricks equal one (1) kilogram of heroin. (ECF No. 1416 at 27 – 29). Petitioner claims that bricks seized in his case all contained less than two (2) grams of heroin, and that the official total seized was 228.64 grams. (*Id.*). Petitioner contends that if the jury applied Officer Warfield's

---

[2] See footnote 1, *supra*, at 8.

testimony to the number of bricks seized, the amount of heroin would have totaled approximately 250 grams. (*Id.*).

However, as noted by the Government, there is no evidence that Officer Warfield's testimony regarding the typical contents of heroin packets in Western Pennsylvania affected the jury's decision to convict Petitioner for distributing at least one (1) kilogram of heroin. Indeed, Petitioner admits that it was witness testimony, as well as the physical evidence seized, that contributed to the jury's conclusion. (ECF No. 1416 at 18 – 19). Even if the jury mistakenly assumed that each brick in Petitioner's case contained two (2) grams of heroin, and that 250 grams were ultimately seized, the jury still relied much more heavily on other witness testimony to conclude that Petitioner distributed at least one (1) kilogram of heroin.

Again, Petitioner is required to show that his counsel's performance was deficient, and that the deficiency prejudiced the defense sufficiently to call into question the accuracy of the conviction. *Strickland*, 466 U.S. at 687. To rebut the strong presumption of reasonableness, Petitioner is required to show that his counsel was not motivated by the strategy he employed, or that his strategy was not sound. *Thomas*, 428 F.3d at 499. Petitioner did not make either showing. Further, in light of the fact that the jury relied upon much more than the quantity of heroin seized to justify convicting Petitioner for distributing at least one (1) kilogram of heroin, Petitioner has not demonstrated prejudice by his counsel's decision not to seek a curative instruction.[3] Petitioner has not shown ineffective assistance of counsel, here.

---

[3] See also footnote 1, *supra*, at 8.

## V. CONCLUSION

Based upon the foregoing, this Court will deny Petitioner's motion for relief under 28 U.S.C. § 2255, without a hearing, and a Certificate of Appealability will be denied. An appropriate order follows.

/s Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties

**GREGORY WASHINGTON**
USMS 32795068
PO Box 2000
Fort Dix, NJ 08640